IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. 21-CR-30170-SPM-1 |
| **AARON WALLACE,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Suppress Statements and Evidence and memorandum in support filed by Defendant Aaron Wallace. (Docs. 37, 38). The United States (the "Government") filed a response to the motion. (Doc. 42). For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Wallace and the Government agree on a simple set of facts. On November 17, 2021, Wallace was indicted by a federal Grand Jury with one count of Distribution of Methamphetamine. (Doc. 1). On May 3, 2022, Illinois State Trooper John Baudino and other law enforcement, as part of the United States Marshals Great Lakes Regional Fugitive Task Force, moved to execute an arrest warrant for Wallace quickly after discovering his vehicle at a bar he owned in East St. Louis, Illinois. (Docs. 4, 6, 38, 42).

After briefing at the courthouse on the plan to arrest Wallace, officers formed a perimeter around the bar two blocks away. (Docs. 38, 42). Baudino approached the

front door and knocked loudly. (*Id.*). No one answered Baudino's knock, and so officers started a forced entry. (*Id.*). While this was going on, according to Baudino, Wallace responded from the interior and unlocked the door. (*Id.*). Baudino immediately entered and arrested Wallace without resistance, securely handcuffing him behind his back. (*Id.*). Baudino asked Mr. Wallace if there were other persons in the business, to which Wallace replied "no." (*Id.*). Baudino then inquired as to the presence of any guns on the premises. (*Id.*). Wallace responded that there was a gun in the back by a couch. (*Id.*). The officers conducted a "safety sweep," and discovered a black AR-15 style rifle near the couch in an office. (*Id.*). The officers seized the rifle. (*Id.*). No other individuals were discovered inside the business. (Doc. 38). Wallace was taken into custody.

In April 2023, a Grand Jury returned a superseding indictment that charged Wallace with an added count of possession of a firearm by a felon related to the May 2022 arrest, in violation of 18 U.S.C. § 922(g)(1).

Wallace moved to suppress statements he made during his arrest and the firearm seized during his arrest. (Doc. 25). Wallace argued that he was not mirandized before he was questioned, and the officers lacked a reasonable basis for a protective sweep of the residence.

The Government argued that the arresting law enforcement officer was not required to provide Wallace with his *Miranda* rights prior to inquiring about weapons because this question was not designed to elicit an incriminating response. The Government also argued that, regardless of the statement, law enforcement officers were justified in conducting a protective sweep of the premises to ensure their safety.

On July 17, 2023, the Court held an evidentiary hearing and Baudino testified regarding his encounter with Wallace at his business during the execution of the warrant that led to the search and seizure. (Doc. 45). During his testimony, Baudino said that the task force executed the warrant in the middle of the day. He described the bar as having an older clientele and no violent incidents to his knowledge. Baudino put much stock into what he claimed was Wallace's delayed response answering the door of the business. He stated that Wallace could have concealed someone or prepared for an offensive ambush in that time. He later acknowledged that he described the delay as moments in his police report. He also admitted that he only saw Wallace's vehicle outside of the business and that Wallace told him that he was the only person there. He further stated that didn't hear anything or observe anything that would cause him to be suspicious that any other person was on the premises. Baudino additionally reported that Wallace was cooperative and that he handcuffed Wallace immediately upon entry. When asked about some of the factors that would cause him to avoid a safety sweep, Baudino gave the example of an open ballroom. He later admitted that the area at the front door where Wallace was arrested was an open space area, like a ballroom, that was viewable through the windows of the business.

## LEGAL STANDARD

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights.

Regarding the suppression of statements, to protect an individual's right against self-incrimination, a suspect must be advised of certain rights prior to being

subjected to custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). In a narrow exclusion to *Miranda*, the Supreme Court recognized a "public safety" exception which permits the admission of answers to questions posed in a limited custodial interrogation so long as the questions are "reasonably prompted by a concern for the public safety." *New York v. Quarles,* 467 U.S. 649, 656 (1984). Questions fall within the exception when they relate to an objectively reasonable need to protect the law enforcement or the public from immediate danger that a weapon would pose, rather than a testimonial interrogation of a suspect to obtain evidence. *See Quarles,* 467 U.S. at 659. When arresting law enforcement reasonably believe that a suspect has a concealed weapon near the place of arrest, they may ask about the weapon even after the suspect has been handcuffed and searched. *See Quarles,* 467 U.S. at 652; *see also U.S. v. Edwards,* 885 F.2d 377, 380, 384 (7th Cir. 1989). The exception is also based on concern that people other than the suspect, such as an accomplice or member of the public, might discover a weapon. *See Quarles,* 467 U.S. at 657. Because it is a narrow exception, it is applicable only when the case-by-case situational exigencies justify its use. *See id.* at 658.

In relation to the suppression of evidence, the Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has explained that "[i]n order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful

search and seizure." *Simmons v. U.S.*, 390 U.S. 377, 389 (1968).

However, the United States Supreme Court has determined that in certain circumstances, police officers can lawfully conduct a warrantless search. In *Terry v. Ohio*, the Court ruled that "police conduct, necessarily swift action predicated upon the on-the-spot observations of the officer on the beat . . . as a practical matter could not be, subjected to the warrant procedure." *Terry v. Ohio,* 392 U.S. 1, 20 (1968). The Court has recognized that as a precautionary matter and without probable cause or reasonable suspicion, police officers can conduct "protective sweeps" by looking in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. However, this sweep must be based on "specific and articulable facts" that lead officers to believe there are individuals on the premises that pose a danger. *Maryland v. Buie,* 494 U.S. 325, 327 (1989).

## ANALYSIS

Wallace contends his statement regarding the location of the firearm was made while under custodial interrogation and without being read *Miranda* warnings. There is no question that Wallace was in custody when questioned about whether he had a firearm on his person or inside the business. *See U.S. v. Murray*, 89 F.3d 459, 462 (7th Cir. 1996) (defendant was in custody once handcuffed and the officers announced his arrest).

While a close call, the "public safety" exception of *Quarles* does not apply to the un-*Mirandized* statement Wallace made at the time of his arrest regarding the firearm. While true that drug dealers commonly arm themselves, the question Baudino asked in this case was expansive enough to go beyond anything dangerous

Wallace could reach, or lunge, for. *See U.S. v. Hernandez*, 751 F.3d 538, 542 (7th Cir. 2014) (finding that the *Quarles* exception to officer's question about a bag Defendant dropped on the ground beside him with a firearm inside). Additional facts also expand and bolster this point. Baudino's question about firearms was asked in a place in which the public did not have access, at least at the time – Wallace was in his private business off-hours. Baudino admitted during testimony that there was only one vehicle outside of the business and Wallace told Baudino that he was the only individual in the business. Baudino testified that he did not hear or observe anything that would cause him to be suspicious that any other people were around. Wallace was also cooperative and Baudino handcuffed him immediately. Unlike *Quarles*, there was no emergency situation here with potential imminent risk to the public or officers. Had Baudino instead asked about a concealed firearm near the place of arrest or, more specifically, on Wallace's person, that would change the case-by-case analysis. But, simply put, the question asked was not necessary to secure the officers' or the public's safety no matter how pure Baudino's intentions were.

Furthermore, regardless of whether the *Quarles* exception applies, for similar reasons, a protective sweep was not warranted after the arrest. In *Maryland v. Buie*, the Supreme Court articulated that police officers could "assure themselves" that the premises of the arrest was not harboring other dangerous individuals by conducting a protective search. Moreover, "officers should not be forced to suffer preventable risk of ambush, even where a location is so isolated that the officers could conceivably be protected without entering the area." *U.S. v. Burrows,* 48 F.3d 1011, 1013 (7th Cir. 1995). That said, the Seventh Circuit also recognized that "the sweep is a device that

can easily be perverted to achieve ends other than those acknowledged as legitimate in *Buie*." *U.S. v. Henderson*, 748 F.3d 788, 791 (7th Cir. 2014) (citing *Burrows*, 48 F.3d at 1017).

Multiple cases from the Seventh Circuit have given police officers considerable autonomy in conducting protective sweeps when they are made aware of the presence of others on the premises. In *United States. v. Contreras*, the Seventh Circuit upheld the District Court's determination that the presence of another person justified the search. 820 F.3d 255, 269 (7th Cir. 2016) ("Having heard the presence of another person, the police were entitled to sweep the house for their own protection."). In *United States v. Henderson*, police officers, after detaining an individual, "did not know how many occupants or what the occupants were doing inside the house;" as a result, the Court found that their search was considered lawful. 748 F.3d at 792. In this case, however, the officers did not have information confirming that there were others on the premises. As Baudino admitted during testimony, there were no extra cars in the parking lot, no noises from afar once officers were inside, and the arrestee confirmed that no one else was there. While those are not necessarily reasons for an officer to let his guard down from a safety perspective, it was not reasonable to infer that a person posing a threat remained on the premises.

Moreover, *Buie* limits the scope of a protective sweep to a "cursory" inspection of spaces where individuals may be found and must last no longer than is necessary to dispel potential danger; it does not allow for a full search of the premises. 494 U.S. at 326. In determining whether the search was of a limited scope, courts should analyze "the configuration of the dwelling, the general surroundings, and the

opportunities for ambush." *U.S. v. Starnes*, 741 F.3d 804, 808 (7th Cir. 2013). In this case, there was not a close proximity between the back office where the firearm was located and the front door. Just an empty open space by the doorway. Baudino admitted during testimony, while giving his view of an extremely narrow limiting principle to safety sweeps, that an open space, like an open ballroom, would not warrant a protective sweep. He also acknowledged that the warrant was executed in the middle of the day and that the business had an older clientele with no violent incidents to his knowledge. What is more, once officers handcuffed Wallace, they could have almost immediately brought him right out of the door to a vehicle and avoided any danger at all.

The safety sweep is not a catchall to avoid applying for a warrant when law enforcement desire to conduct a search on the fly – it is a narrow exception to the warrant requirement. In this Court's estimation, there was very little justification for a safety sweep during the execution of the arrest warrant on Wallace.

## Conclusion

Consequently, the inquiry regarding the firearm in this case violated *Miranda* and the warrantless search and seizure conducted was unlawful. Defendant Aaron Wallace's Motion to Suppress Evidence (Doc. 37) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:** August 1, 2023

                                            *s/ Stephen P. McGlynn*
                                            **STEPHEN P. McGLYNN**
                                            **U.S. District Judge**